Good morning, Justices. Christian Garrison on behalf of the Appellate. He just promoted us. We're no justice in the Ninth Circuit. But you know that. Yes, I do. This is a fairly straightforward case when it comes to the insurance issue against the insurance company. This is a question that apparently the District Court struggled with. It had issued an opinion actually in 1996, the Pellin-Steed case, which had the exact opposite result as the one that we saw in this case. The District Court apparently felt that the issue had not been resolved by the California Supreme Court. Pellin-Steed said that this distinction between accidental death policies and accidental means policies is a clear distinction. The California Supreme Court has made the decision to enforce that distinction. The distinction is a fairly straightforward one. Accidental death policies only require that the death be unexpected or unintended. Accidental means policies require that as well, but they also require some event that causes that death to also be unexpected or unintended. And in your view, I'm not yet talking about the remand jurisdictional issue. I'm talking about the substantive issue of accidental death and accidental means. And in your view, if I have a heart attack tomorrow, that's automatically covered as under an accidental death policy. As long as that heart attack is unexpected or unintended. Well, I expect it's going to be unintended. I don't know. And what do you mean by unexpected? I'm hypothesizing. I've been healthier, so I have thought. I've got a family history of heart disease. And my father died at age 45. When I reach 46, I die of a heart attack. Is that unexpected? I think that's an issue that each trier of fact has to decide. But I would submit, yes, if that death is not expected, is not intended, then it is certainly covered under an accidental death policy, but not under an accidental means policy. And the carriers have the right to protect themselves by only issuing accidental means policies. How about if I catch the flu, it turns into pneumonia, I go into the hospital, and I die? Is that an accidental death policy? I think then we would have to listen to the expert testimony of the physician, who is the treating physician, and ask that physician whether or not this person who is in that state, in the hospital, whether their death at that point in time was expected or intended. Although I think it would just be in the expected category. I'm after this expected line, which strikes me as a, once we start talking illness, strikes me as a very difficult line to draw. I think it is a factual question that a trier of fact has to decide. But I would remind the Court that the California Supreme Court, and I'm quoting now from Weil, it says, policies requiring only that there be proof of accidental death have been construed broadly, such that the injury or death is likely to be covered unless the insured virtually intended his injury or death, perhaps because the insurer could have limited its liability by employing the accidental means language. And that's from page 140 of the opinion. The district court dismissed because the district court believed that Kachatrian versus Continental Casualty was controlling. That's almost identical to this case. And it seems that the Ninth Circuit has already decided this case against you. How do you deal with Kachatrian? Well, I think I dealt with it in the brief. Yeah, but I'm asking you, how do you deal with Kachatrian? I don't care how you dealt with it in the briefs. The California Supreme Court gets to decide what California law is, not the Ninth Circuit. The Ninth Circuit has answered the question. Aren't we bound by our own precedent? I do not believe so. Where does it say we're not bound by our own precedent? The auto equity doctrine plus the Sasser case and the Beal case from the United States Supreme Court, all state that is the California Supreme Court that gets to decide issues of substantive California law. So if the court is now aware of substantive California law that it is controlling on the issue, it must follow that case and not the Ninth Circuit case. But I'd like to address specifically what happened in Kachatrian. In that case, in the district court, not a single California case on the issue was submitted to the district court. Now, that district court case was from 2002. Weil came out in 1994. Clearly, there was some problem in the way that case was briefed because the pertinent cases were not brought to the court's attention, as well as the Ninth Circuit. The Ninth Circuit does not cite Weil in its opinion in Kachatrian. And that was a case Weil that came down nine years prior to Kachatrian. It cites four cases. It cites a property insurance case, which deals with the definition of accident and property case. That's immaterial. It cites disability cases. Now, in disability cases, there's different benefits that apply, whether it's an accident or sickness that causes the disability. Those are beside the point. There is a very clear distinction here that the California Supreme Court has established. Acknowledging that it's in the minority, it has established a distinction between accidental means and accidental death policies. But, you know, my problem with that is that Weil is not really factually on point. Weil has a very long opinion justifying what has become a minority position and saying we will adhere to this distinction. It's in the face of a dissent by Justice Moskow. I mean, they've clearly thought about it. But Weil doesn't tell me whether this case falls within the accidental death definition. It just tells me that they're maintaining the distinction. And I think that's the problem with the procedural posture that the case is in front of the court now. By dismissing the case on a motion to dismiss and not receiving any factual information on whether this death was expected or unintended, it presents the problem that the court here is now facing. I would submit that since the insured here alleges, or the appellant rather, alleges in the complaint that he was at a casino, he stood up and essentially had a heart attack and dropped dead instantly. Had he unexpectedly just lost a big pot? Not as far as I know. I think he had concluded the evening. That was the allegation in the complaint.  Standing up, he did not intend to die. It's not as if he jumped out of a window or jumped in front of a speeding train and he instantly had a heart attack and died. See, I don't know what facts the court needed to know. If the legal, of course wrong as the law is wrong as the law, but if the law has to be an external cause, then you are neglecting any external cause. So what factual development would need to be made? I don't believe one would need to be made. I think on the record before it, clearly the claim is covered. It was an unexpected or unintended death. That would be covered under an accidental death policy, not under an accidental means policy. We're not submitting that this claim would be covered under an accidental death policy. Okay, so we're really back to the point that this really is an issue of law. You don't need any factual development. I believe the Ninth Circuit can decide this issue on the law, yes. Do you want to talk about the sham defendant diversity removal question, or are you oppressing that? I would like to discuss that issue as well. CSEA, this was an employee organization that also acted as the agent for the policy. They acted as the agent of the insurance company under the Elmstrom Rule, which we have briefed. They made misrepresentations that are about the coverage that are alleged in the complaint. Those allegations are sufficient to state a claim against that agent for misrepresenting coverage. The insurer thought he was just buying life insurance, did not know that. But the district court held against you on the sham defendant grounds, saying that it's so obvious that the statute of limitations is wrong, the possibility of stating a survivable claim is so slim that it's a sham defendant. How do you respond to the statute of limitations question? Well, the statute of limitations is, again, I think an easy issue. 2695.7 of the insurance regulations clearly states that denials must be in writing. That begins the statute of limitation against the insurance company. And California has adopted this sort of pragmatic approach that once the denial occurs, that's when the statute runs for the defendants, both the agents and the carriers. And that way, you don't have two competing cases. Here, it takes until the insured learns of the reasons for the denial of the claim in writing, receives the information about the Department of Insurance, who to contact, and the basis for the denial. At that point, the insured then is on notice under the Spray-Gould case that they have to file a lawsuit within a specified time against both their insurance company and the agent. When did she get the written denial in this case? She has never received it. That means she's never been damaged. Actually, Your Honor, under the Frazier case, it is very clear that if there is an unreasonable denial in response to a claim, that the insured can sue whenever that unreasonable period has elapsed. I submit it has elapsed. You're trying to have your cake and eat it, too, aren't you? You claim on one hand that there was no notification in writing, but she was damaged, and the limitations period didn't start to run because she wasn't damaged. I mean, aren't you trapped in your own problem here? No, Your Honor, and the reason why is because that is the problem of the insurance company if it violates the regulations. It violated the regulations by not denying this claim in writing. And when it does that, it suffers the following penalty. The insured can sue whenever it wants. Okay. Why don't we hear from the other side, and we'll give you a chance to rip out. Thank you. Good morning, Your Honors. Jay Orlandi on behalf of Defendant Mutual of Omaha Insurance Company, Defendant Apelli. May it please the Court, this matter is actually a very simple matter. It all revolves around the issue of an accident. Before we get to whether or not it's an accidental death, an accidental dismemberment, an accidental disability policy, the overarching issue is whether or not there was an accident. Under the terms of this policy, injuries mean accidental bodily injuries received while insured under the certificate, and they must result in covered loss independent of sickness and other causes. This policy insures against loss of life, loss of limbs, loss of hearing, speech, and all sorts of other possible losses. The complaint alleges that Mr. Evans, while having dinner with his friends, got up and suddenly, unexpectedly, through no design of his own, had a heart attack and died. As the Court has noted in Kachatrian v. Continental Casualty Company, the Ninth Circuit has, on all fours, specifically on an almost factually analogous case, held as a matter of law that, in that case, a stroke was not an accident as a matter of law on the basis that there was no external predicate event preceding the death. The Court also distinguished between external acts or events and internal natural processes. Now, if we just think about what a stroke is, it's basically, the stroke is almost the equivalent of a heart attack, and the brain is just a loss of blood in the brain versus the heart. Therefore, a fair and reasonable reading of Kachatrian would apply that holding here. The Court in Kachatrian, the implication that Kachatrian was unaware of Weil is flawed on multiple grounds. One, the Court specifically states, Judge Schrader, Chief Judge Schrader, in her opinion, states that the Court has reviewed California law. Also, one of the primary reasons for taking that case in the Ninth Circuit and resulting in a published opinion was to resolve the conflicting issues in the district courts below, one of which was Bornstein, which Counselor Pound has mentioned, was Judge Rafiti's opinion in 1996 below. There was also the Paulson, the Hiley, and the Ashar cases, all of which had somewhat different opinions on whether or not the issue was or was not an accidental death. Those cases, many of them had discussed Weil and its progeny. Therefore, in the Ninth Circuit making its review and deciding whether or not Bornstein or Kachatrian below was the proper precedent for the Ninth Circuit interpreting California law necessarily had to make a determination as to whether or not Weil was controlling in the factual circumstances similar to the case at Barr. Again, the Kachatrian Court recognizes that a progressive condition or slow deterioration culminating in a tangible harm does not constitute an accident. And the Court went on to hold as a matter of law that death by stroke in that instance, because it's based on an internal and natural bodily process as opposed to an external event or force, cannot be an accident. And I would submit respectfully that this Court is bound to apply and uphold Ninth Circuit authority on point unless the matter were to be. Let me ask you this. If we didn't have Kachatrian in this circuit and we were simply looking at California case law, I assume you're going to argue that you win. But does it become a closer question if we don't have Kachatrian on the books? I don't believe so, Your Honor. I think Kachatrian is what makes it an absolute slam dunk. I think the call is no closer whether or not Kachatrian exists, because, again, the issue If that's true, why did you remove? Why did we remove, Your Honor? Yeah. Well, we believe that diversity jurisdiction was proper, and that was a No, that's a different question. I asked you, jurisdiction is proper, and if it is, then you can remove. My question is not whether you could remove, although that will be my question in a moment. My question is rather, why did you remove? We removed, Your Honor, as a tactical strategy, which you understand that too. Certainly. Our client is a diverse defendant, and we are used to practicing in Federal courts, as is our client, concerned with the consistency that Federal practice affords it across the nation. So that was the basis for our removal. Let me ask you about the removal. I assume that we share common ground on the following point, and that is, even if it turns out that CSEA has a good statute of limitations defense, that doesn't necessarily mean that they're a sham defendant. I believe it does, Your Honor. Well, how can that be? Because the claim, the issue is whether it's a sham defendant, not whether it's a defendant with a good defense. That's true, Your Honor. There are only two possible theories of recovery that Plant alleges against CSEA, and both of them fail as a matter of law. No, no. I've got a different point, and I think we can establish and agree on it. The fact that the CSEA may have a good defense does not necessarily mean that it is a sham defendant. The rule, Your Honor, is whether or not there is any possibility of recovery against CSEA under California law. And whether it is obvious. Right. And if there's an arguable point, then it's not a sham defendant. Absolutely. In this instance, Your Honor, there's not even an arguable point. Now, what about the argument that I've just heard, which is to say that CSEA is an agent, and the agent has the statute of limitations running comparably to the time it runs against the insurance company? Well, Your Honor, first, I would submit that the complaint does not necessarily clearly allege there's agency. We'll accept that that allegation is true for the second part. I mean, you're stuck with the fact you're in federal court and you're pleading under Rule 8. Certainly. If you're in state court, maybe you can make that argument. We'll accept as true that there's an agency issue. The allegations of what, for purposes of the sham defendant removal, we have to look specifically at CSEA's conduct, not mutual home laws. It's whether or not a claim can be had against them. Now, CSEA, the only liability they have is in 1996, appellants and decedent went to CSEA and allegedly said, I'd like to have a policy. That policy was issued. In June of 1998, Mr. Evans died. Now, also in June of 1998, Ms. Evans went, alleges in the complaint, she went to CSEA on 10 to 20 separate occasions in June of 1998 and specifically said, I'd like to make a claim under this policy and was summarily denied in each of those instances. Therefore, if the claim is that in 1996 You don't mean it was summarily denied. They don't have the power to deny, do they? The request was summarily denied, according to the request to submit a claim was summarily denied. She wants forms and they say you can't have the forms. Well, the complaint specifically says that this claim will not be covered. That's what the complaint alleges. But they don't have the power to deny, right? No. But in any event, in June of 1999, whatever CSEA told Ms. Evans in 1996 when they received the policy, in June of 1998 when she went to them and said, well, you told me I have this policy and now I'd like to make a claim under it. And CSEA allegedly told her on 20 separate occasions, no, you can't make a possible claim. At that point in June of 1998, the statute of limitations has to start running. She has every fact that she needs to know that would give rise to a justiciable claim. Nothing between June of 1998 and March of 2003 when this complaint was filed ever happened that would have given her additional knowledge or additional facts. That's under one possible theory. The other theory is that CSEA in June of 1998, by not providing Ms. Evans with these facts, allegedly prejudiced her claim to receive benefits from Mutual of Omaha. Well, that presumes that there would ultimately be some liability. The court below has determined as a matter of law that there was no accident here. There was no coverage under the policy. That's a cart before the horse. That is to say this Court has determined that. Yes. And that's not necessarily to say that the State Court would have determined that. No. That's true, Your Honor. But in any event, I believe that the Butcher and Desai cases, which plaintiff has relied on, to toll the statute of limitations between the period of the representations made by the agent and an ultimate denial of coverage, really are not binding in this instance. Because in those circumstances, take, for example, if I go to an insurance agent today and say I'd like a million dollars in coverage for my wife and I only get $500,000 in coverage and I don't look at my policy or realize this. Ten years from now, I die. My wife goes to make a claim and finds out that I only have $500,000 in coverage, but she was told I had a million. Nothing would have happened before I died ten years down the line to let her know that there was a claim until that was a denial. Therefore, you know, it makes intuitive sense to give her a tolling in that period. This is a much different case because, again, in 1998, Mr. Evans died. In 1998, Ms. Evans was completely on notice of every fact she needed to know from CSEA. Therefore, you can't just pull the statute of limitations and rely on me. My problem that I keep struggling with is I've dealt with a fair amount of insurance law over the years looking at California cases, and California case law occasionally hammers you guys in ways that I don't expect. I'm not quite sure how to respond to the specific question. Well, but what I'm driving at is in order for you to be able to dismiss CSEA as a sham defendant, it has to be obvious. And I'm having trouble with the conclusion that it's obvious. I believe it is obvious. And, Your Honor, I would like to let Mr. Dieffenbach have a few moments to argue the matter on behalf of CSEA. Well, you know, you should have said that at the beginning, that you wanted to share time. Oh, I'm sorry. I did explain that to the clerk at the beginning of the hearing. Oh, okay. Well, we were not aware of it, but why don't we give Mr. Dieffenbach a couple of minutes. I apologize. Thank you very much. Thank you, Your Honor. Sure. Let's start out with two minutes and see where we go. Thank you, Your Honor. May it please the Court. I'm Richard Dieffenbach on behalf of CSEA. Your Honor, I think, Your Honors, I think the points made by my co-counsel, by Mutual's counsel, are important. I don't want to repeat them. The reason why I believe this was obvious, that CSEA was a sham defendant, to answer the Court's pending question, is twofold. One is, I believe it's obvious this is not an accident. A heart attack is not an accident. And the second reason is, the complaint itself alleges damage in June of 1998. It says she was damaged in June of 1998. By what? By Mutual's refusal to provide her with a form, according to the allegations. That statement is binding on the plaintiff. If she was damaged, the investigation period would begin to run. How about the argument that she's Mutual's agent, and therefore, I guess, has the same claim, exists against Mutual's, against CSEA. What about that claim? It's sort of like arguing that it's half dog and half cat, Your Honor. Either CSEA is Mutual's agent, and it's told. Or CSEA is not Mutual's agent, and the statute began to run in June of 1998, when she was damaged. I would submit that the Elstrom case, which the plaintiff relies upon to hold us as agent, is distinguishable. At footnote 7 of that case, the Court talks about the employer being an administrator of the policy. The policy here, which is at the appellate record in page 87, page 89 of the appellate record, the excerpt of the record, says that a claim to be made should be made to us. Us is defined as Mutual of Omaha. It doesn't say make a claim to CSEA. So in that situation, we are not on the same footing as the insurance company or the employer in Elstrom, and I would think that would be the distinguishing factor there. Is that an arguable point? I understand you believe you can win it, but is it slam-dunk obvious that that's so? Well, it's in the policy. It says who to make the claim to. It says us is only one entity. There's no suggestion that the employer is even involved in the administration. So I think it is obvious. And what's the relationship with CSEA in the sense of why would any insured or beneficiary go to CSEA and ask for forms and CSEAs instead of saying, well, listen, we have nothing to do with this. Instead, your client seems to say, listen, you're not covered. Why doesn't your client say, listen, talk to the insurance company. We're out of this.  All the complaint says is the claimant came, asked for a form and was denied the form. Right. Obviously, we're dealing with the complaint. We're at a 12B6 stage. We accept everything is true, and I understand what happened is that your client, instead of saying, listen, we're out of this, talk to that guy, your client sort of interposed itself and said, you've got nothing here. Well, all I can say, Your Honor, is that the policy is abundantly clear as to who to make a claim to, and it says us, and us is defined clearly as mutual of Omaha. It is as plain as I can make it. Well, I understand that that may be a winning argument, but again, I'm after this point about obviousness as to whether or not you are a sham defendant instead of a winning defendant. Well, Your Honor, viewing the policy, which is, I think, subject to judicial notice, I think it's part of the complaint here, it's as obvious that making a claim to CSEA would be improper or incorrect as it would be for a claim to have been made to Your Honor. Okay. I just, you know. I take the point. I don't want to repeat anything that counsel already said. I don't want to take the Court's time if there are any other questions. Okay. Thanks. Thank you very much. And this was done in entirely good faith. Next time when you show up, alert us at the beginning that you intend to share time. I will, sir. No, I understand. It was not a perfectly innocent misunderstanding. Would you like to rebut? Yes, Your Honor. Three brief points that I'd like to make in the order that they were made by the appellees. The issue as framed by mutual Omaha is whether there was an accident, and I would submit that is just a flat misstatement of the law. The issue here is whether this loss is covered under an accidental death policy, which is an entirely different question. It's a different issue. The California Supreme Court has defined for us what you need to establish for coverage under an accidental death policy, and I would submit that this Court is obligated to follow that rule. Well, we're obligated to follow Katchatrin. And our own circuit court precedent tells us that we're supposed to follow our precedent, even insofar as it construes state law absent intervening authority. I see no intervening authority in the cases that counsel cited that were discussed in Katchatrin. Do talk about Weill for a while. I would submit, Your Honor, that the Court here has two options. The Cessar case, which is a United States Supreme Court case, says the – I'm sorry, is a Ninth Circuit case, and the Beal case, which is a U.S. Supreme Court case, they both say that the state court is the final arbiter of state law. Secondly, if there is a question that the Ninth Circuit has here about whether this claim is covered, what the rule is for accidental death versus accidental means policy, they can submit that question to the California Supreme Court for an answer. By certification? Yes, as in the Vu case, when there was an issue as to what the rule was, and they asked the Supreme Court, and the Supreme Court of California came up with an answer. I don't think that would work here, because we're still bound by our own authority. We'd have to go in-bank before we could do something like that. Well, then I would submit that we would re-hear in-bank if we get to that stage. But moving on to the third point I'd like to make is the sham defendant issue. I think the sign butcher clearly established that the statute begins to run against the agent, against the insurance company, when the claim is denied. And the reason why there's a regulation in California as to writing a letter explaining to the insured why their claim has been denied, that they can contact the Department of Insurance, the reason for that is so the insured knows, gee, should I fight this or not? And since the insured here never received that letter, they should not have that held against them. The violation of the regulation by the insurance company here does not allow them to evade this claim. And then I would submit that we have briefed to the district court the fact that as late as December 2002, the claim was still open. In fact, Mutual of Omaha wrote letters on that issue. So certainly the time had not elapsed after that point. Thank you very much. Thank both counsel for your helpful argument. The case of Evans v. Mutual of Omaha is now submitted for decision.
judges: Trott, W. Fletcher, Restani